1

2

3

4

5        UNITED STATES DISTRICT COURT

6        EASTERN DISTRICT OF WASHINGTON

7    RUDOLPH BABCOCK,

8                        Plaintiff,                NO:  12-CV-5093-TOR

9         v.                                       ORDER GRANTING DEFENDANT'S
                                                   CONVERTED MOTION FOR
                                                   SUMMARY JUDGMENT
10   ING LIFE INSURANCE AND
     ANNUITY COMPANY, a Connecticut
11   corporation,

12                       Defendant.

13       BEFORE THE COURT is Defendant's Motion to Dismiss for Failure to

14   State a Claim, which was subsequently converted into a Motion for Summary

15   Judgment.  ECF No. 2.  This matter was heard without oral argument on November

16   26, 2012.  The Court has reviewed the relevant pleadings and supporting materials,

17   and is fully informed.

18                              BACKGROUND

19       Plaintiff, Rudolph Babcock ("Babcock"), alleges that Defendant ING Life

20   Insurance and Annuity Company ("ILIAC") violated Washington's Insurance Fair

     ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR
     SUMMARY JUDGMENT ~ 1

Conduct Act ("IFCA"), in addition to breach of contract and unjust enrichment

claims.  On July 19, 2002, ILIAC filed a Motion to Dismiss for Failure to State a

Claim.  ECF No. 2.  The Court subsequently issued an Order converting the motion

to dismiss to a motion for summary judgment, and permitting the parties to submit

additional materials for the Court's consideration.  ECF No. 15.  Pursuant to Rule

56(d), Babcock was then granted as short continuance to conduct limited

discovery, and a hearing date was set for November 26, 2012.  ECF No. 23.

Presently before the Court is ILIAC's Converted Motion for Summary Judgment

on all claims.

## FACTS

In August 1994, a jury awarded Babcock $2,475,000.  ECF No. 1, Ex. A at

¶ 3.3.  Instead of accepting this award, Babcock agreed to a settlement with

defendant State of Washington for $1,000,000 based on a structured settlement

plan whereby he would receive $3,200 a month from February 1, 1997 through

August 1, 2010, and a "sum certain" of $690,000 on August 22, 2010.  ECF No. 9-

1, Ex. B.  The supplemental judgment memorializing this payment schedule

included a provision allowing the State of Washington to assign its liability to

make these periodic payments to AETNA Life Assignment Company ("ALAC").

*Id*.  Babcock, the State of Washington, and ALAC, entered into a Uniform

Qualified Assignment and Release ("Release") effective February 15, 1995,

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR
SUMMARY JUDGMENT ~ 2

indicating that the assignee ALAC "may fund the Periodic Payments by purchasing a 'qualified funding asset' … in the form of an annuity contract issued by the Annuity Issuer.  All rights of ownership and control of such annuity contract shall be and remain vested in the Assignee [ALAC] exclusively."  *Id*. at Ex. D, ¶ 6.[1] The supplemental judgment was subsequently amended on June 2, 1995 to reflect Babcock and the State of Washington's agreement that AETNA Life Insurance Company would issue a letter guaranteeing the performance of obligations assigned to ALAC by way of the Release under which ALAC would purchase an annuity from AETNA Life Insurance and Annuity Company ("ALIAC") [2] to cover its assigned obligations.  *Id*. at Ex. C.   This guarantee was executed on July 14, 1995.  *Id*. at Ex. E.

---

[1] The Release specified that it was to "be governed by and interpreted in accordance with the laws of the State of Connecticut."  ECF No. 9-1, Ex. D, ¶ 5.

[2] ALIAC was the predecessor-in-interest to Defendant ING Life Insurance and Annuity Company ("ILIAC").  See ECF No. 1, Ex. A at ¶¶ 3.10-3.11.  Furthermore, while there is no indication in the record as to any specific purchase of ALAC by ING or ILIAC, ILIAC appears to concede in its briefing that it assumed the obligation to make periodic payments under the terms of the Release.  From this point forward the Court will refer to the Defendant as ILIAC, except when necessary to distinguish between ALAC and ILIAC.

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR SUMMARY JUDGMENT ~ 3

1    Around May 25, 2010, Ms. Marshall, the mother of Babcock's child, moved

2    for and obtained an *ex parte* Temporary Restraining Order ("TRO") from the

3    Cuyahoga County Ohio Juvenile Court enjoining ILIAC from making the lump

4    sum payment.[3]  ECF No. 1, Ex. A at ¶ 3.13; ECF No. 9-2, Ex. B.  The motion was

5    granted on May 27, 2010, and entered on June 11, 2010.  ECF No. 9-2 at Ex. F, H.

6    ILIAC complied with the Ohio Court Order and withheld payment pending further

7    instruction. ECF No. 4 at 5.  On July 26, 2010, Babcock, through his attorney, filed

8    an emergency motion for relief from judgment.  ECF No. 9-2 at Ex. I-L.  Babcock

9    alleged that the TRO suffered from numerous procedural inadequacies, including:

10   it was not supported by a bond, not properly served, not supported by mention of

11   exigent circumstances justifying its ex parte issuance, not enforceable 28 days

12   following issuance because the party who asked for the TRO did not move for a

13   preliminary injunction.  ECF No. 1, Ex. A, ¶ 4.7.  The TRO was vacated on or

14   about January 10, 2011 and the court directed ILIAC to deliver $10,000 to the

15   Cuyahoga County Child Support Enforcement Agency, to be held as a bond

16   securing Babcock's monthly child support obligations.  ECF No. 9-2 at Ex. M.

17   Babcock filed an appeal contesting the court's decision to retain the $10,000 bond,

18   but the appeal was dismissed for failure to file a brief.  *Id*. at Ex. N-O.  Babcock

19   received his payment of $680,000 ($10,000 less than the original amount due as

20   _____

[3] ILIAC was also added as a defendant in this suit.  *See* ECF No. 9-2, Ex. D-E.

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR
SUMMARY JUDGMENT ~ 4

per the state court order) on April 5, 2011.  ECF No. 1, Ex. A, ¶ 3.35.  According to Babcock's attorney, Ms. Marshall's attorney now holds the $10,000 in his IOLTA account pending trial in the underlying domestic dispute.  Powers Decl., ECF No. 9-2 at ¶¶ 10-11.

Babcock's Complaint alleges that ILIAC violated the IFCA by failing to pay Babcock the $690,000 upon the occurrence of August 22, 2010, and failing to indemnify and defend Babcock's interests when those benefits were "disrupted by facially and procedurally invalid TROs."  ECF No. 1, Ex. A., ¶ 4.4.  Babcock also seeks damages for breach of contract and unjust enrichment, that is, consequential damages incurred by the delayed payment and profits ILIAC earned during the period his lump sum payment was withheld.  ECF No. 1, Ex. A., ¶¶ 5.1-6.6.

## DISCUSSION

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(d), the Court issued an Order informing the parties that due to matters outside the pleadings presented by Babcock and not excluded by the Court, ILIAC's Motion to Dismiss for Failure to State a Claim would be treated as a Motion for Summary Judgment under Rule 56.  ECF No. 15.  The parties were given a reasonable opportunity to present additional material pertinent to the motion.  *See* Fed. R. Civ. P. 12(d).

The Court may grant summary judgment in favor of a moving party who

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR SUMMARY JUDGMENT ~ 5

demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the court must only consider admissible evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).  The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law.  *Id.* at 248.  Further, a material fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party.  *Id.*  The court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 327, 378 (2007).

## B. Breach of Contract

 "A structured settlement takes place when a tort defendant or its liability carrier purchases an annuity, with the tort plaintiff as the beneficiary, to settle a

1    civil lawsuit." *Legal Economic Evaluations, Inc. v. Metropolitan Life Ins. Co.*, 39

2    F.3d 951 (9th Cir. 1994).  In this case, the parties to the structured settlement

3    signed the Release, under which ALAC [4] assumed all of the State of Washington's

4    liability to make all the periodic payments owed to Babcock under the structured

5    settlement agreement.  ALAC, as the assignee of the tort defendant State of

6    Washington, then purchased an annuity from ILIAC, with Babcock as the

7    annuitant.  *See* ECF No. 9-1 at Ex. E.  Babcock claims the Release was breached

8    when ILIAC failed to pay him the lump sum payment of $690,000 due on August

9    22, 2010.

10          A breach of contract claim is actionable in Washington "if the contract

11    imposes a duty, the duty is breached, and the breach proximately causes damage to

12    the claimant." *Nw. Indep. Forest Mfrs. V. Dep't of Labor and Industries*, 78 Wash.

13    App. 707, 712 (Ct. App. 1995).   The doctrine of impossibility may excuse a party

14    from performing under a contract where performance is impossible or

15    impracticable due to extreme and unreasonable difficulty, expense, injury or loss.

16    *Thornton v. Interstate Securities Co.*, 35 Wash. App. 19, 30 (Ct. App. 1983).

17    However, "[t]he mere fact that a contract's performance becomes more difficult or

18    expensive than originally anticipated, does not justify setting it aside." *Id.*

19    _____

[4] As indicated supra n. 2, ALAC was the predecessor in interest to Defendant

20    ILIAC.

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR
SUMMARY JUDGMENT ~ 7

1    ("Subjective inability to perform (*e.g.*, although it is possible this promise can be

2    kept, I cannot) does not excuse performance.").  Moreover, the event which

3    renders performance impossible must be fortuitous and unavoidable on the part of

4    the promisor.  *Metropolitan Park Dist. Of Tacoma v. Griffith*, 106 Wash.2d 425,

5    440 (1986).

6            ILIAC argues that it was justified in suspending payment of the final lump

7    sum under the structured settlement agreement due to the court order issued on

8    May 27, 2010 by the Ohio state court "restraining and enjoining [ILIAC] from any

9    further distribution of the proceeds or content of the funds … pending adjudication

10   of this action or further order of this Court."  ECF No. 9-2 at Ex. F.  The Supreme

11   Court has held that "[i]t is beyond question that obedience to judicial orders is an

12   important public policy. An injunction issued by a court acting within its

13   jurisdiction must be obeyed until the injunction is vacated or withdrawn.  A

14   contract provision the performance of which has been enjoined is unenforceable."

15   *W.R. Grace and Co. v. Local Union 759, Intern. Union of United Rubber, Cork,*

16   *Linoleum and Plastic Workers of America*, 461 U.S. 757, 766-67 (1983) (internal

17   citations omitted).  Furthermore, ILIAC argues that according to the Release,

18   ILIAC was under no contractual or legal duty to defend Babcock in a domestic

19   dispute with Ms. Marshall.  ECF No. 20 at 7.

20           In response, Babcock makes three arguments.  First, he cites to several cases

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR
SUMMARY JUDGMENT ~ 8

for the proposition that injunctions obtained by a third party do not excuse a party's performance under a contract.  ECF No. 8 at 8.  However, the Court finds that each of these non-binding cases is distinguishable from the instant case.  *See Union Contracting & Paving Co. v. H.C. Campbell*, 2 Cal. App. 534, 537 (1905) (finding injunction procured by third party does not toll a contractual deadline by which the parties must agree whether to extend performance);  *Klauber v. San Diego St. Car. Co.*, 95 Cal. 353, 358 (1892) (applying strict impossibility doctrine that "[i]t must be shown that the thing cannot by any means be effected" and "[n]othing short of this will excuse non-performance.");  *Wilkinson v. First Nat'l Fire Ins. Co.*, 72 N.Y. 499, 503 (1878) (holding the statute of limitations was not stayed by an injunction).  In *Brown v. Ehlinger*, the only Washington case cited by Babcock,[5] the court found that an injunction procured by a third party preventing the crushing of rock at a specific location did not make performance impossible by law because the place of crushing the rock was not "the essence of the contract."

---

[5] As noted supra, the Uniform Qualified Assignment and Release is governed by Connecticut law.  At the time the annuity was acquired, Babcock was a resident of Ohio, and Aetna was located in Connecticut.  ECF No. 9-1, Ex E (Annuity Application).  Thus, it is not at all clear to the Court that Washington law applies in this case.

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR
SUMMARY JUDGMENT ~ 9

90 Wash. 585, 589-90 (1916).  In contrast to *Brown*, the "essence of the contract" in this case *is* the payment of the lump sum to Babcock, which was specifically enjoined by the TRO.

The Court also finds that Babcock fails to consider relevant developments in the law of impossibility and impracticability, which has evolved considerably over the course of the twentieth century.  Pursuant to the § 261 of the Restatement (Second) of Contracts,

> [w]here, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary."

Restatement (Second) of Contracts § 261 (1981).  Further, "[i]f the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order, that regulation or order is an event the non-occurrence of which was a basic assumption on which the contract was made." *Id*. at § 264.  Federal and state courts have expanded on this principle and found that the entry of a judicial order rendering performance legally impossible may excuse a party's performance so long as it did not cause, fail to prevent, or contribute to the entry of the judicial order.  *See Hicks v. U.S.*, 89 Fed. Cl. 243, 258 (Fed. Cl. 2009); *Lowenschuss v. Kane*, 520 F.2d 255, 265 (2nd Cir. 1975) (reversing summary judgment based on possible fault of the party owing performance); *Inter-*

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR SUMMARY JUDGMENT ~ 10

1  *American Development Bank v. Nextg Telecom Ltd.*, 503 F.Supp.2d 687, 696

2  (S.D.N.Y. 2007); *In re Craven's Estate*, 169 Pa. Super. 94, 99 (Pa. Super. Ct.

3  1951); *Leon County v. G.J. Gluesenkamp, Jr.*, 873 So.2d 460, 463-64 (Fla. Dist.

4  Ct. App. 2004).

5        Certainly the entry of a court order barring ILIAC from paying the lump sum

6  to Babcock was an event the non-occurrence of which was a basic assumption on

7  which this contract was made.  Furthermore, the Court finds insufficient evidence

8  in the record to show a genuine issue of material fact that ILIAC caused, failed to

9  prevent, or contributed to the entry of the judicial order.  Babcock offers emails

10  between Ms. Marshall's attorney and ILIAC regarding the status of the court order,

11  but all of these documents were sent *after* the TRO was filed on May 27, 2010.

12  Although ILIAC was added as a defendant in the state court action, the certificate

13  of service indicates that a copy of the motion for a TRO was never mailed to

14  ILIAC.  See ECF No. 9-2, Ex. B, D, E.  Additionally, the motion for the TRO by

15  Ms. Marshall was made *ex parte*, and Babcock again offers no evidence that her

16  attempt to enjoin ILIAC from making the lump sum payment was anything other

17  than unilateral.  Crotty Decl., ECF No. 25, Ex. B, C.

18        The only evidence offered by Babcock that ILIAC was aware of the pending

19  TRO is his declaration indicating that he spoke with a representative of ILIAC in

20  the benefits department, not the legal department, in "June 2010" and was told that

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR
SUMMARY JUDGMENT ~ 11

1   ILIAC would "wait and see" if the preliminary injunction was actually issued.

2   ECF No. 27 at ¶ 4.  However, the state court hearing on this matter was decided on

3   May 27, 2010, well before Babcock spoke with ILIAC about the TRO.  *See* ECF

4   No. 9-2, Ex. F, H.  The Court is similarly unpersuaded by Babcock's testimony

5   that he "knows" ILIAC had copies of the "invalid" TRO because ILIAC "told

6   [him] of the TRO when [he] called in June 2010," or that this alleged awareness by

7   ILIAC somehow proves that ILIAC was in contact with Ms. Marshall's attorney

8   prior to the issuance of the TRO in May 2010.  *Id*. at ¶ 3.  Again, any purported

9   contact in June 2010 is not relevant to a purported failure to prevent, cause, or

10  contribute to the May 2010 issuance of the TRO.  For all of these reasons, the

11  Court finds no triable issues of fact as to whether ILIAC's performance was

12  excused pursuant to a court order that it did not cause, contribute to, or fail to

13  prevent.

14          Second, Babcock contends that a party faced with an invalid injunction must

15  take steps to contest the injunction in order to preserve the impossibility defense.

16  ECF No. 8 at 9.  Babcock repeatedly outlines the alleged deficiencies in the TRO,

17  and claims that ILIAC was under an obligation to contest the TRO.[6]  The primary

18  [6] Babcock contends that ILIAC was obligated to intervene and presents several

19  options as to how this could have been accomplished, including: filing a

20  declaratory judgment action seeking confirmation that the TRO was void, moving

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR
SUMMARY JUDGMENT ~ 12

legal support offered by Babcock to support this argument [7] is a non-binding case

from the Superior Court of Delaware holding that

> the plea setting such excuse must show that the injunction relied upon as a
> defense made performance impossible, and also that it was not secured by
> the act or fault of the defendant.  A party will not be permitted to escape
> liability under his contract by securing or consenting to an injunction.  And,
> if the defendant could have secured a dissolution of the injunction it did not
> make performance of the contract impossible, within the meaning of the law.

*Peckham v. Industrial Securities Co.*, 113 A. 799, 802 (Del. Super. Ct. 1921).  As

indicated above, the Court has already found that the TRO was not secured by act

---

to quash the invalid TRO, seeking to have Ms. Marshall stipulate to the TRO's

dismissal "given its undisputed invalidities," and seeking to have Ms. Marshall

post bond.  ECF No. 24 at 6.

[7] Babcock cites to one Washington case to support this argument.  *See Dike v.
Dike*, 75 Wash.2d 1, 8 (1975).  However, *Dike* is distinguishable from the instant

case as it does not address the issue of whether a court order or injunction may

legally excuse a party's performance under a contract.  Babcock also cites to a

Sixth Circuit case which is distinguishable from the instant case as that court found

that the injunction did not "absolutely" forbid the performance of the contract.  *See
South Memphis Land Co. v. McLean Hardwood Lumber Co.*, 179 F. 417, 421 (6th

Cir. 1910).  There is no dispute that the express terms of the TRO expressly forbid

ILIAC from paying the lump sum to Babcock.

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR
SUMMARY JUDGMENT ~ 13

1    or fault of the defendant.  That only leaves the issue of whether the defendant was

2    under an obligation to secure a dissolution of the allegedly invalid TRO.

3          As an initial matter, the Court has identified no Ninth Circuit or Washington

4    law to support a finding that ILIAC was under an affirmative obligation to

5    intervene in the domestic litigation between Babcock and Ms. Marshall to secure a

6    dissolution of the TRO in order to sustain an impossibility defense.  The record

7    shows that Babcock himself made an emergency motion for relief from judgment

8    on July 26, 2010.  ECF No. 9-2 at Ex. I, K, L.  It also appears that the parties in the

9    underlying TRO matter were instructed to agree on a draft judgment entry

10   containing a provision for the posting of a cash bond to secure payment of

11   Babcock's support obligation.  *Id*. at Ex. L.  However, on September 22, 2010,

12   Babcock submitted a supplemental memorandum in support of his emergency

13   motion for relief, stating his objections to the cash bond, and presumably refusing

14   to submit a draft judgment entry that would have released his $680,000 without

15   delay.  *Id*.  After considering Babcock's motion, the state court vacated the

16   restraining order on January 11, 2011, and directed that $10,000 be held by the

17   Cuyahoga County Child Support Enforcement Agency as a cash bond.  *Id*. at Ex.

18   M.  ILIAC also testified that it made multiple attempts to contact Babcock's

19   lawyer on the state court matter, to which it received no response.  Latta Decl.,

20   ECF No. 29, Ex. 2-3.  Thus, even if the Court were to apply non-binding state

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR
SUMMARY JUDGMENT ~ 14

1   court law, the Court would find no genuine issue of material fact indicating that

2   ILIAC "consented" to the entry of the TRO or that it "could have secured a

3   dissolution" of the TRO. [8] *See Peckham*, 113 A. at 802.

4        Last, Babcock relies on well-established Washington law directing that the

5   event which renders performance impossible under a contract must be fortuitous

6   and unavoidable on the part of the promisor. *See Metropolitan Park*, 106 Wash.2d

7   at 440 (*citing Thornton*, 35 Wash. App. at 31). Babcock contends that non-

8   performance after the TRO "expired by virtue of the non-issuance of a preliminary

9   injunction" was not "unavoidable" after the alleged expiration of the TRO on June

10   25, 2010, and argues that ILIAC should have taken steps to challenge the TRO.[9]

11   ECF No. 8 at 10-13. The Court finds this argument unavailing. A close reading of

12   the Washington law cited by Babcock clarifies that it is the event itself which

13   renders performance under the contract impossible that must be unavoidable.

14   Babcock appears to acknowledge that the "event" at issue was Ms. Marshall's

15   ―――――――――――――
[8] It must be noted that even if the Court found that ILIAC had an obligation to

16   intervene or defend in the domestic dispute, the Court cannot conceive of any

17   action ILIAC could have taken that would have resulted in a more favorable

18   outcome for Babcock than his own diligent pursuit of relief from the TRO, which

19   included an emergency motion for relief, a hearing on that motion, and an appeal.

20   [9] *See* n. 6 supra.

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR
SUMMARY JUDGMENT ~ 15

motion for a TRO filed on May 25, 2010,[10] but argues nonetheless that non-performance after the TRO allegedly expired on June 25, 2010 was not unavoidable, and that ILIAC should have taken steps to contest the TRO before was due on August 22, 2010.  This argument is inapposite.  As indicated by the Court above, there is no evidence in the record to suggest that ILIAC had any knowledge of Ms. Marshall's intent to seek a TRO prior to her motion filed on May 25, 2010, and therefore the Court finds that this event rendered performance impossible and was "unavoidable" by ILIAC.  Babcock testified that he and his attorney made numerous attempts to contact ILIAC *after* the TRO was issued between June and August of 2010, however, the "event" identified by Babcock that allegedly rendered performance impossible, the issuance of the TRO, had already occurred at this point in time.  Babcock Decl., ECF No. 27 at ¶ 3; ECF No. 9-1, Ex. F.  Moreover, the TRO itself specifically instructed ILIAC to refrain from paying Babcock the lump sum payment "pending adjudication of this action or further order of this court." ECF No. 9-2 at Ex. F.

---

[10] The Court is confused by Babcock's reference to May 25, 2010 as the date of issuance of the TRO, when the record shows the TRO was issued on May 27, 2010.  While the Court notes the disparity, it is not material to its finding on this matter.

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR
SUMMARY JUDGMENT ~ 16

The Court is cognizant of guidance from the Second Circuit that "[i]n all but the clearest cases" resolution of the defense of impossibility involves issues of fact that must be resolved after the parties have time to present their evidence. *Lowenschuss*, 520 F.2d at 265-66. However, even in the light most favorable to Babcock, the Court finds that this is one of those "clearest" of cases where the Court can discern no triable issues of material fact as to whether the issuance of a judicial order lawfully excused ILIAC's suspension of the final lump sum payment under the doctrine of impossibility and impracticability. Further, the record shows that after the TRO was vacated, ILIAC disbursed Babcock's lump sum payment minus the $10,000 dollars ILIAC paid to the Cuyahoga County Child Support Enforcement Agency as instructed by the state court order.[11] Summary judgment on the breach of contract claim is granted to Defendant.

[11] In accordance with the state court order, the record shows that ILIAC paid $10,000 to the Cuyahoga County Juvenile Court. ECF No. 4 at 5-6. The record also includes a declaration by Babcock's attorney in the state court matter indicating that further litigation regarding the state court's order on the $10,000 bond is pending in that jurisdiction. ECF No. 9-2 at 43-45. The Court finds that jurisdiction over that matter is properly held by the Ohio Juvenile Court, and declines to issue any ruling as to the $10,000 payment already made by ILIAC in compliance with the state court order.

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR SUMMARY JUDGMENT ~ 17

1        **C. Unjust Enrichment**

2        "Unjust enrichment is the method of recovery for the value of the benefit

3        retained absent any contractual relationship because notions of fairness and justice

4        require it." *Young v. Young*, 164 Wash.2d 477, 484 (2008).  The three elements

5        necessary to establish an unjust enrichment claim include: (1) a benefit was

6        conferred upon the defendant by the plaintiff; (2) the defendant had knowledge or

7        appreciation of the benefit; (3) the defendant's acceptance or retention of the

8        benefit without the payment is inequitable under the circumstances of the case.

9        *See id*. (*quoting Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61Wash.App. 151,

10       159-60 (Ct. App. 1991).  The Court finds as a matter of law that Babcock is not

11       entitled to any investment proceeds of the annuity purchased by ILIAC.

12       Babcock's Complaint alleges that by virtue of retaining the lump sum

13       payment, ILIAC was unjustly enriched "to the extent the assets in which the

14       $690,000 was invested made [ILIAC] money over and above the $680,000 that

15       [ILIAC] paid [Babcock] on April 5, 2011." ECF No. 1, Ex. A at ¶ 6.3.  ILIAC

16       contends that the Release explicitly "disassociates [Babcock] from any ownership

17       rights in the investment tools used by ILIAC to generate the state of Washington's

18       obligated periodic payments."  ECF No. 20 at 10.  Babcock does not dispute this

19       argument in his responsive briefing.

20       The Release clearly states that the Assignee, in this case ALAC, may fund

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR
SUMMARY JUDGMENT ~ 18

1  the periodic payments through the issuance of an annuity contract issued by the

2  Annuity Issuer, in this case ILIAC.  *Id.* at Ex. D.  Moreover, under the terms of the

3  Release, ALAC may have ILIAC send the payments under the annuity directly to

4  the payee, in this case Babcock.  *Id.* at ¶ 6. Significantly for the purposes of this

5  claim, however, "[s]uch direction of payments shall be solely for the Assignee's

6  convenience and shall not provide the Claimant or any payee with any rights of

7  ownership or control over the [annuity] or against [ILIAC]." *Id.* at ¶ 7.  Thus, the

8  Court finds that under the plain language of the Release, Babcock has no rights

9  against ILIAC for any proceeds of the annuity investment.  Babcock is entitled

10 under the Release to receive the agreed upon periodic payments, but he has no

11 claim of ownership or control over the annuity used to fund those periodic

12 payments.[12]  Summary judgment on the unjust enrichment claim is granted.

13   **D. IFCA Claim**

14      Under the IFCA, "[a]ny first party claimant to a policy of insurance who is

15 unreasonably denied a claim for coverage or payment of benefits by an insurer may

16

17 [12] Babcock has not sued for the negligible amount of statutory interest that may

18 have accrued from the day the restraining order was vacated to the day ILIAC paid

19 the $680,000 to Babcock and paid the $10,000 to the state court, but has rather

20 only pleaded an unjust enrichment claim.

1    bring an action in the superior court of this state." Wash. Rev. Code

2    § 48.30.015(1).  "First party claimant" is defined as "an individual … asserting a

3    right to payment as a covered person under an insurance policy or insurance

4    contract arising out of the occurrence of the contingency or loss covered by such a

5    policy or contract."  Wash. Rev. Code § 48.30.015(4).  "Insurance policy" or

6    "insurance contract" is defined as "any contract of insurance, indemnity,

7    suretyship, or annuity issued, proposed for issuance, or intended for issuance by

8    any insurer." Wash. Admin. Code § 284-30-320(7).  After an extensive review of

9    Washington case law, the Court was unable to find a case evaluating the claim of

10   an annuitant in a structured settlement under the IFCA.  However, a reading of the

11   plain language of the IFCA, combined with common sense, compels the Court to

12   find that Babcock's IFCA claim fails as a matter of law.

13        ILIAC argues that the IFCA does not govern the conduct alleged, and that

14   Babcock cannot prove that he and ILIAC were parties to an insurance contract.

15   ECF No. 4 at 11.  According to ILIAC, it "merely assumed the obligations to make

16   periodic payments in the manner described in the structured settlement executed

17   between the State of Washington and [Babcock]."  *Id*. at 12.  The Court agrees.

18   There is no evidence in the record of any actual annuity or insurance policy issued

19   to Babcock by ILIAC.  ECF No. 28 at 2.  Despite his contention otherwise,

20   Babcock fails to demonstrate a genuine issue of material fact that an insurance

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR
SUMMARY JUDGMENT ~ 20

1    contract existed between ILIAC and Babcock.  The "essential elements" for an

2    insurance contract, as cited by Babcock, include (1) an insurer, (2) consideration,

3    (3) a beneficiary, and (4) a hazard or peril insured against.  ECF No. 8 at 15; *State*

4    *v. Universal Service Agency*, 87 Wash. 413, 424 (1915).  Babcock argues that the

5    fourth element is satisfied because the "annuity insured against risk."  However,

6    the Court cannot identify any hazard or peril to be insured against in the case of a

7    structured settlement agreement whereby ILIAC agrees to make periodic payments

8    on the occurrence of certain dates, and does so through the use of an annuity.   The

9    Court finds no genuine issue of material fact that Babcock and ILIAC were parties

10   to an insurance contract, despite the issuance of an annuity from ILIAC to ALAC.

11          Moreover, the Release signed by all the parties indicated that ILIAC could

12   send the payments under the annuity directly to the payee, in this case Babcock.

13   *Id*. at ¶ 6.  However, as indicated above, "[s]uch direction of payments shall be

14   solely for the Assignee's convenience and shall not provide the Claimant or any

15   payee with any rights of ownership or control over the [annuity] or against

16   [ILIAC]." *Id*. at ¶ 7.  Thus, ILIAC rightfully argues that Babcock agreed that he

17   has no legally protected interest in the method that ILIAC uses, in this case the

18   annuity, to make the required periodic payments.

19          Even if the Court were to find a triable issue of fact remained as to whether

20   there was an insurance contract between Babcock and ILIAC, Babcock's IFCA

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR
SUMMARY JUDGMENT ~ 21

1  claim would still fail as a matter of law.  First, under the plain text of the statute,

2  Babcock is not a "first party claimant."   Babcock is correct that the applicable

3  regulation includes "annuity issued" in the definition of "insurance contract."

4  However, the "right to payment" that Babcock is claiming in this case does not

5  arise out of the "annuity issued" by ILIAC to ALAC for which Babcock is listed as

6  the "annuitant."  Instead, Babcock's "right to payment" arises *only* out of the

7  structured settlement deal executed with the State of Washington, whose liability

8  to make periodic payments (including the lump sum at issue) was subsequently

9  assigned to ILIAC.  The "annuity issued" does not "cover" the "occurrence of the

10  contingency or loss" in this case, namely, the arrival of August 22, 2010 when

11  Babcock was scheduled to receive his lump sum payment.  *See* Wash. Rev. Code

12  § 48.30.015(4).  The Release only states that ILIAC agreed to assume the State of

13  Washington's liability to make periodic payments, but it includes no contractual

14  obligation to make the periodic payments through the use of an annuity.

15  Accordingly, the Court finds that Babcock is not a "first party claimant" to a policy

16  of insurance as a matter of law.

17         Second, the Court finds no evidence that ILIAC "denied" a claim for

18  payment of benefits.  Rather, ILIAC complied with a "temporary" restraining

19  order, and withheld payment until that state court matter was resolved.  Thus,

20  Babcock's IFCA claim fails as a matter of law because there is no evidence in the

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR
SUMMARY JUDGMENT ~ 22

record to show that he was *denied* coverage or payment of benefits. *See Nesbitt v. Progressive Northwestern Ins. Co.*, 2012 WL 5351846, at *4 (W.D. Wash. Oct. 29, 2012) (emphasis added).

Last, Babcock argues that regardless of whether he was a party to the alleged insurance contract, he still has an actionable IFCA cause of action because ILIAC failed to act "in good faith" regarding Babcock's "claim." [13] ECF No. 24 at 8-10. Specifically, Babcock alleges that questions of fact exist as to whether ILIAC reasonably investigated the claim (WAC 284-30-330(4)); whether ILIAC promptly investigated the claim thirty days after notification (WAC 284-30-370); whether ILIAC "promptly" explained why it denied Babcock's clam (WAC 284-30-330(13); and whether ILIAC promptly responded to Babcock's communications (WAC 284-30-360(3)). *Id.* However, Washington courts have explicitly found that "[a]lthough violations of the enumerated regulations provide grounds for trebling damages or for an award of attorney's fees; they do not, on their own, provide a IFCA cause of action absent an unreasonable denial of coverage or payment of benefits." *Cardenas v. Navigators Ins. Co.*, 2011 WL 6300253 at *6 (W.D. Wash. Dec. 6, 2011); *Weinstein & Riley, P.S. v. Westport Ins. Corp.*, No. C08-1694JLR, 2011 WL 887552, at *29 (W.D. Wash. March 14, 2011). As

---

[13] Babcock's Complaint does not include a cause of action for bad faith separate from his IFCA claim. *See* ECF No. 1, Ex. A.

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR SUMMARY JUDGMENT ~ 23

indicated above, the Court has already found, as a matter of law, that Babcock was not "denied" payment of benefits, as he was eventually paid the bulk of his lump sum payment after the state court vacated the TRO.   Thus, there can be no IFCA cause of action for the alleged violations of the regulations cited by Babcock.

Once again, the Court must observe that it is highly doubtful that Washington's IFCA applies to this case in any event.  Babcock is and has been a resident of Ohio, while ILIAC is based in Connecticut.  The Court discerns no connection whatsoever to Washington State after the State was fully released from the underlying lawsuit in 1995.

For all of the foregoing reasons, the Court finds that Babcock's IFCA claim fails as a matter of law.  Moreover, as indicated above, the Court finds no genuine issues of material fact as to the breach of contract or unjust enrichment claims.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Defendant's Converted Motion for Summary Judgment, ECF No. 2, is

    **GRANTED**.

The District Court Executive is hereby directed to enter this Order and Judgment accordingly, provide copies to counsel, and **CLOSE** the file.

**DATED** this 2nd day of January, 2013.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR
SUMMARY JUDGMENT ~ 24